Craig H. Durham
Idaho State Bar No. 6428
Ferguson Durham, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208)-345-5183
F: (208)-906-8663
chd@fergusondurham.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| MELANIE IRENE PETTY,<br><br>        Plaintiff,<br><br>  v.<br><br>JASON MAXFIELD, in his individual capacity; VAL BLEVINS, in his individual capacity; JEFF ANDERSON, in his individual capacity; BRENDEN LOUDERMILK, in his individual capacity; the CITY OF WEISER, IDAHO, a governmental entity acting through its city council, and WASHINGTON COUNTY, IDAHO, a governmental entity acting through its Board of Commissioners,<br><br>        Defendants. | Case No. 1:18-cv-00149<br><br>**CIVIL COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CIVIL COMPLAINT - 1

# INTRODUCTORY STATEMENT

1. Melanie Irene Petty seeks compensatory relief from all Defendants for an illegal search of her home, and an unlawful search and seizure of her person, by Weiser police officers and Washington County Sheriff's deputies on April 5, 2016.

# JURISDICTION

2. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343. The federal action is authorized by 42 U.S.C. § 1983.

3. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims within the Court's original jurisdiction that they form a part of the same case or controversy.

# VENUE

4. The Defendants reside in the District of Idaho, and Plaintiff's claims for relief arose in this District. Accordingly, venue in the District of Idaho is proper under 28 U.S.C. § 1391.

# PARTIES

5. Plaintiff Melanie Irene Petty is a resident of the state of Idaho. She lives in Washington County, Idaho.

6. Defendant Jason Maxfield was at all relevant times acting under color of state law through his employment as a police officer for the City of Weiser, Idaho. On

information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

7. Defendant Sergeant Val Blevins was at all relevant times acting under color of state law through his employment as a police officer for the City of Weiser, Idaho. On information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

8. Defendant Sergeant Jeff Anderson was at all relevant times acting under color of state law through his employment as a sheriff's deputy for Washington County, Idaho. On information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

9. Defendant Brenden Loudermilk was at all relevant times acting under color of state law through his employment as a sheriff's deputy for Washington County, Idaho. On information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

10. Defendant City of Weiser is a political subdivision of the state of Idaho that was at all relevant times the governmental entity that employed Defendants Maxfield and Blevins, and the City of Weiser negligently hired, trained, and/or supervised its law enforcement officers. Moreover, it had a policy, practice, or custom that was the moving force behind the constitutional violations in this case.

11. Defendant Washington County is a political subdivision of the state of

Idaho that was at all relevant times the governmental entity that employed Defendants Anderson and Loudermilk, and Washington County negligently hired, trained, and/or supervised its law enforcement officers. Moreover, it had a policy, practice, or custom that was the moving force behind the constitutional violations in this case.

## FACTS RELEVANT TO ALL CLAIMS

12. On April 5, 2016, Thomas Berenbak went uninvited to Melanie Petty's home in Weiser, Idaho, to drop off a son whom Berenbak and Petty have in common. Berenbak wanted Ms. Perry to take the child a day earlier than their normal custody schedule allowed. Ms. Petty agreed to take the child, and she put him in a bedroom.

13. She came out of the room to find Berenbak in the home. He refused to leave. He and Petty then argued.

14. Berenbak became verbally and physically aggressive, pushing Ms. Petty to the ground. To protect herself, she grabbed a nearby Pepsi can and threw it at him, hitting him in the forehead.

15. Berenbak then grabbed the child and left the house. He took the boy to Ms. Petty's sister's home, which was nearby.

16. A neighbor called the police to report an ongoing verbal altercation.

17. Officer Jason Maxfield of the Weiser Police Department arrived at the home at about 10:45 p.m, and he spoke to a neighbor, whom he knew personally. The neighbor told Maxfield that the argument and activity at the home had been escalating.

According to the neighbor, at one point a female chased a male down the street and demanded that he delete some sort of "incriminating videos."

18. Officer Maxfield went to Ms. Petty's home and knocked on the door, which was slightly ajar. He announced himself and called out to her. As he knocked, he opened the door wider. He shined his flashlight into the darkened home, but he did not see anyone or get an answer.

19. Officer Maxfield left the front door area, walked on the front lawn, and shined his flashlight around and into the windows of the home before returning to the front door, where he knocked and opened the door even wider. Again, he shined his flashlight into the home, but he still did not get a response from anyone inside.

20. Maxfield left Petty's home and met with Sergeant Jeff Anderson and Deputy Brenden Loudermilk, of the Washington County Sheriff's Department, who had encountered Berenbak down the street.

21. Berenbak had a bruise with a little blood above his right eye.

22. Berenbak told Maxfield that the supposed "incriminating video" that the neighbor had mentioned showed Ms. Petty "acting out" before she hit him with a can. He said it was on his phone, which he believed was in her home somewhere. He told the officers that he did not live in the home. He said that Ms. Petty had an order that she not have contact with him.

23. Berenbak also told the officers that "she took off."

CIVIL COMPLAINT - 5

24. Officer Maxfield, in consultation with Sergeant Val Blevins of the Weiser Police Department, and Sergeant Anderson and Deputy Loudermilk of the Washington County Sheriff's Department, decided to enter Ms. Petty's home to search for her.

25. The officers did not have a warrant.

26. They were not in hot pursuit of a dangerous and fleeing felon.

27. There were no other exigent circumstances.

28. Moreover, they lacked probable cause to arrest Ms. Petty.

29. Nonetheless, all four uniformed officers entered her residence and conducted a thorough and comprehensive search throughout the private areas of her home, and through the adjoining curtilage of the home, for over 15 minutes.

30. They shined their flashlights and called out for Ms. Petty in all parts of her home.

31. They also searched in the surrounding enclosed yard area in a similar manner.

32. Eventually, Ms. Petty was found in the yard hiding underneath a truck.

33. Officer Maxfield ordered her out and handcuffed her.

34. He read her *Miranda* rights to her and told her he was arresting her for domestic battery.

35. At his patrol car, Officer Maxfield asked Ms. Petty if she had any weapons, and she responded that she wasn't a violent person and didn't even have any

pockets to hide anything. She told him her phone was in her waistband. Maxfield got her phone and said that he was going to search her before she got in his patrol car.

36. Included as part of his hand search over Ms. Petty's clothing, Officer Maxfield ran his hands between, on, and underneath Ms. Petty's breasts.

37. Neither Officer Maxfield, nor any other officer, attempted to contact a female officer to conduct this cross-gender search.

38. Officer Maxfield then took Ms. Petty to jail, where she was booked.

39. She was charged with misdemeanor domestic battery and violation of a no-contact order.

40. She was compelled to pay for bond and to hire an attorney to defend against the charges.

41. The charges were eventually dismissed.

42. As a result of the unlawful search and arrest, Ms. Petty suffered mental and emotional injuries, pain, distress, anguish, embarrassment and humiliation, as well as other actual damages, in amounts to be proven at trial.

43. On August 2, 2016, Ms. Petty filed a timely Notice of Tort Claim with the City of Weiser and Washington County, claiming violations of her state and federal rights.

44. The governmental entities did not respond.

45. These officers lacked training and supervision in conducting lawful

searches and seizures.

46. On information and belief, the conduct in this case was customary within the officers' respective agencies, and was part of a policy, practice, or custom in those agencies.

47. Those policies, practices, or customs were the moving force behind the violations of Ms. Petty's rights.

## CLAIMS FOR RELIEF

### I.

**Defendants Maxfield, Blevins, Anderson, and Loudermilk**

**Violation of the Right to be Free From Unreasonable Searches under the Fourth and Fourteenth Amendments**

**42 U.S.C. § 1983**

48. Ms. Petty incorporates paragraphs 1 through 47.

49. At all relevant times, Defendants Maxwell, Blevins, Anderson, and Loudermilk were acting under color of state law.

50. The Defendants entered Ms. Petty's residence and its curtilage without a warrant.

51. These Defendants' entry and search of Ms. Petty's residence and its curtilage was unreasonable.

52. This search violated Ms. Petty's rights under the Fourth and Fourteenth Amendments.

CIVIL COMPLAINT - 8

53. The violation damaged Ms. Petty in an amount to be ascertained at trial.

II.

**Defendant Jason Maxfield**

**Violation of the Right to be Free From Unreasonable Searches
under the Fourth and Fourteenth Amendments**

**42 U.S.C. § 1983**

54. Ms. Petty incorporates paragraphs 1 through 53.

55. At all relevant times, Defendant Jason Maxfield was acting under color of state law.

56. Defendant Maxfield's cross-gender pat-down of Melanie Petty's breasts was unreasonable.

57. Defendant Maxfield's unreasonable search violated Ms. Petty's rights under the Fourth and Fourteenth Amendments.

58. The violation damaged Ms. Petty in an amount to be ascertained at trial.

III.

**Defendant Jason Maxfield**

**Violation of the Right to be Free from Unreasonable Seizures
Under the Fourth and Fourteenth Amendments**

**42 U.S.C. § 1983**

59. Ms. Petty incorporates paragraphs 1 through 58.

60. At all relevant times, Defendant Jason Maxfield was acting under color of

state law.

61. Defendant Maxfield's arrest of Ms. Petty, which was a seizure of her person, was unreasonable.

62. Defendant Maxfield's unreasonable seizure violated Ms. Petty's rights under the Fourth and Fourteenth Amendments.

63. This violation damaged Ms. Petty in an amount to be ascertained at trial.

## IV.

## Defendant City of Weiser

## 42 U.S.C. § 1983: *Monell* Claim

## Failure to Train or Supervise Law Enforcement Officers

64. Plaintiff incorporates paragraphs 1 through 63.

65. The City of Weiser is the public entity that governs the Weiser Police Department.

66. Officer Maxfield and Sergeant Blevins, City of Weiser police officers, were acting under color of state law.

67. Officer Maxfield and Sergeant Blevin's unreasonable search of Ms. Petty's residence violated Ms. Petty's rights under the Fourth and Fourteenth Amendments.

68. Officer Maxfield's unreasonable search of Ms. Petty's person violated her rights under the Fourth and Fourteenth Amendments.

69. Officer Maxfield's unreasonable seizure of Ms. Petty's person violated her

rights under the Fourth and Fourteenth Amendments.

70. The City of Weiser's policies, practices, or customs were not adequate to train or supervise its law enforcement officers to handle the usual and recurring situations with which they must deal.

71. The City of Weiser was deliberately indifferent to the known or obvious consequences of its failure to train or supervise its officers adequately.

72. The City of Weiser's failure to train or supervise its deputies was the moving force behind the constitutional violations to Melanie Petty, which injured and damaged her in an amount to be ascertained at trial.

## V.

### Defendant Washington County

### 42 U.S.C. § 1983: *Monell* Claim

### Failure to Train or Supervise Law Enforcement Officers

73. Plaintiff incorporates paragraphs 1 through 72.

74. Washington County is the public entity that governs the Washington County Sheriff's Department.

75. Sergeant Anderson and Deputy Loudermilk, Washington County Sheriff's officers, were acting under color of state law.

76. Sergeant Anders and Deputy Loudermilk's unreasonable search of Ms. Petty's residence violated her rights under the Fourth and Fourteenth Amendments.

77. Washington County's policies, practices, or customs were not adequate to train or supervise its Sheriff's deputies to handle the usual and recurring situations with which they must deal.

78. Washington County was deliberately indifferent to the known or obvious consequences of its failure to train or supervise its deputies adequately.

79. Washington County's failure to train or supervise its deputies was the moving force behind the constitutional violations to Rachel Petty, which injured and damaged her in an amount to be ascertained at trial.

## VI.

## Defendant City of Weiser

## Negligent Hiring, Supervision, or Training

## Idaho Tort Claims Act, Idaho Code §§ 6-901 through 6-929

80. Plaintiff incorporates paragraphs 1 through 79.

81. Idaho has waived its sovereign immunity for state law claims seeking money damages from governmental entities or their employees, acting within the course and scope of their employment, for negligent or other wrongful acts. Idaho Code § 6-903(a).

82. The City of Weiser has a duty to the public, including Plaintiff, to exercise ordinary care in the hiring, training, and supervision of its law enforcement officers.

83. The City of Weiser breached its duty to exercise ordinary care in the

hiring, training, and supervision of Officer Jason Maxfield and Sergeant Val Blevins.

84. The City of Weiser's breach of its duty to exercise ordinary care to hire, train, and supervise its law enforcement officers was the "but for" and proximate cause of Plaintiff's injuries, which include pecuniary and non-pecuniary damages and attorney fees and costs.

## VI.

## Defendant Washington County

## Negligent Hiring, Supervision, or Training

## Idaho Tort Claims Act, Idaho Code §§ 6-901 through 6-929

85. Plaintiff incorporates paragraphs 1 through 84.

86. Idaho has waived its sovereign immunity for state law claims seeking money damages from governmental entities or their employees, acting within the course and scope of their employment, for negligent or other wrongful acts. Idaho Code § 6-903(a).

87. Washington County has a duty to the public, including Plaintiff, to exercise ordinary care in the hiring, training, and supervision of its law enforcement officers.

88. Washington County breached its duty to exercise ordinary care in the hiring, training, and supervision of Sergeant Jeff Anderson and Deputy Brenden Loudermilk.

89. Washington County's breach of its duty to exercise ordinary care to hire, train, and supervise its law enforcement officers was the "but for" and proximate cause of Plaintiff's injuries, which include pecuniary and non-pecuniary damages and attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

1. Finding and declaring that Plaintiff's protected federal and state rights were violated as set forth in this Complaint;

2. Awarding Plaintiff monetary damages, in an amount to be determined at trial, that will fully and fairly compensate the Plaintiff for her injuries and losses, pain and suffering, and emotional distress and anguish;

3. Awarding Plaintiff punitive damages, in an amount sufficient to punish Defendants for their evil motive or intent, or for their reckless and callous indifference for the constitutional rights of others, and to deter others from like conduct;

4. Awarding Plaintiff her reasonable attorney fees and costs against Defendants under 42 U.S.C. § 1988, Idaho Code §§ 12-120, 12-121, and any other applicable statutes or rules;

5. Setting a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.

6. Any other relief that the Court deems appropriate.

SUBMITTED ON THIS 2nd day of April, 2018.

<u>/s/ Craig H. Durham</u>

Attorney for Plaintiff

CIVIL COMPLAINT - 15